UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

| | |
|---|---|
| DAWN M. SAMPSON, | CIVIL COMPLAINT |
| Plaintiff, | |
| v. | CASE NO. 3:19-cv-02683 |
| AMERICAN ELITE RECOVERY, LLC and LAW FIRM OF KARL FRANKOVITCH, LLC, | DEMAND FOR JURY TRIAL |
| Defendants. | |

## COMPLAINT

NOW comes DAWN M. SAMPSON ("Plaintiff"), by and through her attorneys, Sulaiman Law Group, Ltd. ("Sulaiman"), complaining as to the conduct of AMERICAN ELITE RECOVERY, LLC ("AER"), and LAW FIRM OF KARL FRANKOVITCH, LLC ("Frankovitch") (collectively, "Defendants"), as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for damages pursuant to the Fair Debt Collection Practices Act ("FDCPA") under 15 U.S.C. §1692 *et seq.,* as well as common law fraudulent misrepresentation, for Defendants' unlawful conduct.

### JURISDICTION AND VENUE

1

2. This action arises under and is brought pursuant to the FDCPA. Subject matter jurisdiction is conferred upon this Court by 15 U.S.C §1692, 28 U.S.C. §§1331 and 1337, as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claim pursuant to 28 U.S.C. §1367 because it arises out of a common nucleus of operative facts as Plaintiff's federal question claims.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendant conducts business in the Northern District of Florida a substantial portion of the events or omissions giving rise to the claims occurred within the Northern District of Florida.

**PARTIES**

4. Plaintiff is a consumer over 18 years-of-age residing in Cantonment, Florida, which is within the Northern District of Florida.

5. Plaintiff is a "person," as defined by 47 U.S.C. §153(39).

6. AER is a debt collection agency operating out of New York. AER is a limited liability company organized under the laws of the state of New York with its principal place of business located at 1561 Kenmore Avenue, Kenmore, New York.

7. Frankovitch is a law firm who regularly attempts to collect consumer debts from consumers across the country, including the state of Florida. Frankovitch is a professional service limited liability company organized under the laws of the state

of New York with its principal place of business located at 904 Center Street, Lewiston, New York.

8. Defendants are "person[s]" as defined by 47 U.S.C. §153(39).

9. Defendants acted through their agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives and insurers at all times relevant to the instant action.

## FACTS SUPPORTING CAUSES OF ACTION

10. The instant actions stems from Defendants' attempts to collect upon past due payments ("subject debt") Plaintiff purportedly owes in connection with a personal installment loan she incurred from spotloan.com ("Spotloan").

11. On July 10, 2019, Plaintiff received a phone call from the phone number (855) 764-8941.

12. Plaintiff did not answer the call, and a voicemail message was left.

13. The caller identified themselves as "David Hampton" working with the "legal department" for AER.

14. After outlining Plaintiff's last four of her social security number and providing Plaintiff's date of birth, the voicemail message began making a series of egregious misrepresentations and unlawful threats about the nature of the subject debt and Defendants' efforts to go about collecting the debt.

15. AER's employee falsely identified that AER "works for" the Santa Rose County Courthouse.

16. Plaintiff was informed that, unless she called AER by 2:00 p.m. EST *that day,* Plaintiff *will* face criminal charges in Santa Rose County Court in connection with purported "fraud" relating to the subject debt.

17. AER then advised that they were working with the sheriff's department on detaining Plaintiff so that she could be brought back to Santa Rosa County to answer her charges.

18. AER further specified and accused Plaintiff of committing check fraud in connection with the subject debt.

19. AER went on to state that Plaintiff would be served with court papers at her place of employment – and that AER knew where she worked.

20. AER confirmed it knew where she worked by correctly identifying her current employer – even providing the address where she worked.

21. AER further threatened to put a boot on Plaintiff's car – specifically identifying the car make, model, and color when making this baseless threat.

22. AER went on to state that if a boot was not placed, at the very least a lien against the vehicle would be sought, as well as a lien on any other property.

23. AER then advised that if Plaintiff did not call them to work something out, she was looking at criminal charges and fines, including $3,000 for the "bad checks,"

another $3,000 for "internet fraud," $2,200 in additional "fees," and a "forcible recovery" of property.

24. AER then said that, in order to avoid facing criminal charges and around $10,000 in "criminal fines," Plaintiff *had to* contact AER that day.

25. AER provided Plaintiff a "docket number" that she had to provide when calling back so that AER could identify the account.

26. Signing off, AER's representative advised that the "easiest way" to avoid the criminal actions was to call and work something out.

27. After hearing AER's voicemail and fearing that she was being actively sought for criminal charges and fines in connection with the subject debt, Plaintiff returned AER's call and spoke with Mr. Hampton.

28. When Plaintiff spoke with Mr. Hampton, he began berating and yelling at her, further reiterating many of the false and baseless threats contained in the voicemail Plaintiff received.

29. Fearing for her personal and financial well being, Plaintiff agreed to make a $1,500.00 payment to stop the threatened criminal prosecution and settle the debt in full.

30. Plaintiff was then transferred to an individual who accepted Plaintiff's payment.

31. After making payment, Plaintiff was transferred to Mr. Hampton's supervisor, Nicole Shapiro, so that Plaintiff could express her displeasure with Mr. Hampton's demeanor.

32. Ms. Shapiro then listened to the recording of the conversation and apologized to Plaintiff for Mr. Hampton's behavior, further telling Plaintiff that Mr. Hampton would be fired.

33. However, Plaintiff later realized that Mr. Hampton was not fired.

34. After getting off the call with AER, Plaintiff received an email from AER and a letter from AER advising that the subject debt had been settled in full.

35. Wanting to ensure that the situation was dealt with, Plaintiff did some digging, and realized that AER is not associated with Santa Rosa County Court, that she was not the active target of any criminal investigation, and that AER had made numerous egregious misstatements in violation of numerous laws.

36. Plaintiff attempted to stop the $1,500 payment she made to AER; however, the payment had already posted by the time Plaintiff realized she had been defrauded.

37. Through her attempts to stop payment, Plaintiff realized that the $1,500 payment was taken out of her account by Frankovitch.

38. As such, AER and Frankovitch worked in concert to defraud Plaintiff.

39. Frustrated, confused, upset, and distraught over Defendants' conduct, Plaintiff spoke with Sulaiman regarding her rights, resulting in expenses.

40. Plaintiff has been unfairly and unnecessarily harassed, abused, misled, and defrauded by Defendants' actions.

41. Plaintiff has suffered concrete harm as a result of Defendant's actions, including but not limited to, pecuniary loss stemming from relying on Defendants' misrepresentations, invasion of privacy, anxiety, fear that she was the target of an active criminal investigation, concern that her employment would be impacted by the subject debt, and undue and significant emotional distress.

**COUNT I – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**

42. Plaintiff repeats and realleges paragraphs 1 through 41 as though fully set forth herein.

43. Plaintiff is a "consumer" as defined by 15 U.S.C. §1692a(3) of the FDCPA.

44. AER is a "debt collector" as defined by § 1692a(6) of the FDCPA because it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. It is further a debt collector because it is a business the principal purpose of which is the collection of debts. AER identified itself as a debt collector in the written communication it sent to Plaintiff confirming her payment, further illustrating that it is a debt collector.

45. Frankovitch is a "debt collector" under § 1692a(6) because, much like AER, it regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. Frankovitch's role of accepting the payment illustrates the connectedness between it and AER such that both are liable under the FDCPA.

46. The subject debt is a "debt" as defined by FDCPA §1692a(5) as it is an obligation or alleged obligation arising out of a transaction due or asserted to be owed or due to another for personal, family, or household purposes.

    a. **Violations of FDCPA §1692d**

47. The FDCPA, pursuant to 15 U.S.C. §1692d, prohibits a debt collector from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."

48. Defendants violated §1692d through the series of harassing, oppressive, and abusive threats made against Plaintiff. Such threats had the natural consequence of, and actually did, harass, oppress, and abuse Plaintiff as Plaintiff was unduly frightened into believing she would be subject to criminal prosecution, fines, seizure of property, etc. in the event she did not make payment.

    b. **Violations of FDCPA § 1692e**

49. The FDCPA, pursuant to 15 U.S.C. §1692e, prohibits a debt collector from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

50. In addition, this section enumerates specific violations, such as:

> "The false representation or implication that the debt collector is vouched for, bonded by, or affiliated with the United States or any State . . . ." 15 U.S.C. § 1692e(1);

> "The false representation of – the character, amount, or legal status of any debt;" 15 U.S.C. § 1692e(2)(A);

> "The false representation that any individual is an attorney or that any communication is from an attorney;" 15 U.S.C. § 1692e(3);

> "The representation or implication that any debt will result in the arrest or imprisonment of any person or the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action." 15 U.S.C. § 1692e(4);

> "The threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5);

> "The false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer." 15 U.S.C. § 1692e(7);

> "The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer." 15 U.S.C. §1692e(10).

51. Through Defendant's conduct, each of the above referenced provisions was violated in numerous ways.

52. Defendants violated §§ 1692e, e(1), e(3), and e(10) through the representations that Defendants were working for the Santa Rosa County Courthouse. This was a demonstrably false representation as Defendants do not work for nor have any affiliation with the Santa Rosa County Courthouse.

53. Defendants violated §§ 1692e, e(2)(A), e(4), e(5), e(7), and e(10) through the numerous representations regarding criminal prosecution, criminal charges, criminal fines, being detained, arrested, served with court papers, having property seized, etc. that Plaintiff experienced in the voicemail message left by Defendants. Although Plaintiff initially thought Defendants were being truthful, thus prompting her payment, subsequent research revealed the gross falsity of Defendants' statements. Defendants' false statements caused Plaintiff direct pecuniary loss given the payment she made as a result of Defendants' misrepresentations.

54. Defendants further violated §§ 1692e and e(10) through the false representation that Mr. Hampton would be fired. This was a deceptive statement made to curry favor with Plaintiff, lest Plaintiff be more upset about the fraud that had been perpetuated against her.

   c. **Violations of FDCPA § 1692f**

55. The FDCPA, pursuant to 15 U.S.C. §1692f, prohibits a debt collector from using "unfair or unconscionable means to collect or attempt to collect any debt."

56. Defendants violated §1692f when they unfairly and unconscionably attempted to collect on a debt, and accepted Plaintiff's payment, by repeatedly and falsely threatening Plaintiff with criminal prosecution, fines, arrest, property seizure, etc. Defendants' representations are demonstrably false and constitute unfair and unconscionable debt collection conduct which significantly harmed Plaintiff.

57. As pled in paragraphs 39 through 41, Plaintiff has been harmed and suffered damages as a result of Defendant's illegal actions.

WHEREFORE, Plaintiff, DAWN M. SAMPSON, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned bodies of law;

b. Awarding Plaintiff statutory damages of $1,000.00 as provided under 15 U.S.C. §1692k(a)(2)(A);

c. Awarding Plaintiff actual damages, in an amount to be determined at trial, as provided under 15 U.S.C. §1692k(a)(1);

d. Awarding Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1692k(a)(3);

e. Enjoining Defendant from further contacting Plaintiff seeking payment of the subject debt; and

f. Awarding any other relief as this Honorable Court deems just and appropriate.

### COUNT II – FRAUDULENT MISREPRESENTATION

58. Plaintiff repeats and realleges paragraphs 1 through 41 as though fully set forth herein.

59. Under Florida law, the elements for common law claims of fraudulent misrepresentation are: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages from reliance on the statement.

60. Defendants, acting in concert, made numerous false statements of material fact regarding the subject debt. Defendants falsely stated that Plaintiff would, *inter alia,* be arrested, detained and transported for court, charged with crimes, be served papers at her work, have property seized, have to pay almost $10,000, etc.. Defendants further falsely represented the nature of their identity, the entities with whom they were associated, and their overall abilities and rights to collect the subject debt. Such conduct exemplifies several false statements of material fact given such statements were made in the context of Defendants' debt collection efforts.

61. Further, Defendants knew these statements to be false. Given the nature of the representations, it is clear that they were made with knowledge of their falsity. Defendants did not innocently believe that Plaintiff was a target of any criminal investigation – as this was demonstrably false and Defendants would have no basis for making the statements. Instead, Defendants' false statements were made

knowingly in order to advance Defendants' goal of defrauding Plaintiff out of money.

62. Additionally, the nature of Defendants' conduct illustrates their intent that Plaintiff rely on the false statements. The nature of the false statements themselves illustrates their intent that Plaintiff rely – as Defendants knew that threatening a debtor with criminal prosecution would induce such debtor to act in order to avoid such a significant consequence. In addition to the false statements themselves, Defendants ensured that – within their web of lies – some truthful information (e.g., Plaintiff's SSN and DOB, where she works, what kind of car she drives, etc.) was specifically mentioned.  This inclusion illustrates the extent to which Defendants *intended* Plaintiff to rely on their false statements – as their use of truthful information (truthful information that Plaintiff would realize indicated an amount of legitimacy on Defendants' part) was designed to assure Plaintiff that its representations were truthful, even though they were not.

63. Finally, Plaintiff relied upon Defendants' conduct and suffered damages as a result of her reliance of Defendants' conduct. Based solely upon Defendants' false statements, Plaintiff made payment of $1,500. Because Plaintiff would not have made this payment without Defendants' misrepresentations, her reliance caused her damages.

WHEREFORE, Plaintiff, DAWN M. SAMPSON, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Awarding Plaintiff actual damages against Defendants stemming from her reliance on their false statements; and,

b. Awarding Plaintiff punitive damages to address the egregious nature of Defendants' conduct and to deter similar future conduct; and,

c. Awarding any other relief as this Honorable Court deems just and appropriate.

Dated: July 26, 2019

Respectfully Submitted,

/s/ Alexander J. Taylor
Alexander J. Taylor, Esq.
Florida Bar No. 1013947
Sulaiman Law Group, Ltd.
2500 S. Highland Avenue
Suite 200
Lombard, IL 60148
Telephone: (630) 575-8181
Facsimile: (630) 575-8188
ataylor@sulaimanlaw.com
*Counsel for Plaintiff*